```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------x
                              :
LOUISA R. ELLIS, PPA          :
ELIZABETH ELLIS and ELIZABETH :
ELLIS,                        :
                              :
                 Plaintiffs,  :
                              :
v.                            :    Civil No. 3:12cv515(AWT)
                              :
Y.M.C.A. CAMP MOHAWK, INC.,   :
                              :
                 Defendant.   :
                              :
------------------------------x
```

### RULING ON MOTION FOR SUMMARY JUDGMENT

This action arises out of injuries suffered by the minor plaintiff, Louisa Ellis (the "Camper"), when she fell from a horse while participating in activities at a day camp operated by the defendant, Y.M.C.A. Camp Mohawk, Inc. ("Camp Mohawk"). The plaintiffs' complaint consists of two counts, one for negligence and one for consequential damages. Camp Mohawk has moved for summary judgment on both counts. For the reasons set forth below, the defendant's motion is being granted.

**I. FACTUAL BACKGROUND**

On July 18, 2011, the Camper participated in a horseback riding lesson while attending Camp Mohawk's day camp in Cornwall, Connecticut. During this lesson, the Camper was assigned a pony, named Geri, to ride. The plaintiffs claim that

the Camper was given a pony rather than a horse because Camp Mohawk did not have enough horses for all of the campers to ride. At some point during the lesson, the Camper lost control of the pony and was thrown over the pony's shoulder or head. The Camper allegedly had her hands caught in the pony's reins when she fell.

The complaint alleges that the Camper's fall, as well as the injuries and losses the plaintiffs have suffered as a result of the fall, were caused by Camp Mohawk's negligence. Specifically, the plaintiffs list 10 ways in which they believe Camp Mohawk was negligent with respect to the Camper's horseback riding lesson:

> (a) In that the pony was of an insufficient size for the plaintiff to properly and safely ride;
> (b) In that the plaintiff's weight and/or height exceed the reasonably safe riding weight for the pony assigned to the plaintiff;
> (c) In that the riding equipment on the pony (the stirrups) were improperly installed or fitted thereby rendering the pony unsafe for the plaintiff to ride;
> (d) In that the pony was not adequately and/or properly trained thus rendering the pony unsafe and hazardous for the plaintiff to ride;
> (e) In that the pony was of a disobedient disposition thereby causing the pony to be unsafe for riding by the plaintiff;
> (f) In that the defendant failed to properly or adequately train and instruct its employees;
> (g) In that the defendant failed to properly and adequately supervise the camp students including the plaintiff;
> (h) In that the defendant failed to properly or []adequately instruct or teach the camp students including the plaintiff on how to safely and properly ride on a pony;

> (i) In that the defendant failed to warn the plaintiff of the dangers and hazards associated with riding the pony; and
> (j) In that the defendant could not have reasonably assumed that the plaintiff, a minor, possessed the experience and judgment necessary to fully appreciate the dangerous condition of the pony and/or the full extent of the risk involved.

(Complaint (Doc. No. 1), at 3-4.)

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(a) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v.

-3-

Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975).  It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge."  Anderson, 477 U.S. at 255.  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law."  Id.  As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Id. Thus, only those facts that must be decided in order to resolve

a claim or defense will prevent summary judgment from being granted.  When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses.  Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trs. of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be

insufficient; there must be evidence on which [a] jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

**III. DISCUSSION**

Camp Mohawk argues that summary judgment is appropriate here because expert testimony is required to establish the standard of care and breach of duty with respect to instruction

-6-

in horseback riding, and the plaintiff has not offered a relevant opinion from a qualified expert.

### A. Whether Expert Testimony is Required

"In this diversity action, the question of whether or not expert testimony is required to prove negligence is a question of [Connecticut] State law." Conte v. Usalliance Federal Credit Union, Civ. No. 3:01-cv-463(EBB), 2007 WL 3355381, at *3 (D. Conn. Nov. 8, 2007) (citing Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 27 (1st Cir. 2006) ("In a diversity action, whether expert testimony is required is a matter of state law[.]")). The Connecticut Supreme Court has stated on multiple occasions that "[e]xpert testimony is required 'when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors.'" LePage v. Horne, 262 Conn. 116, 125 (2002) (quoting Bader v. United Orthodox Synagogue, 148 Conn. 449, 454 (1961)) (emphasis in original); see also Santopietro v. City of New Haven, 239 Conn. 207, 226 ("If the determination of the standard of care requires knowledge that is beyond the experience of an ordinary fact finder, expert testimony will be required."); State v. McClary, 207 Conn. 233, 245 (1988) (holding that expert testimony is required when a matter is "manifestly beyond the ken of the average trier of fact, be it judge or jury").

Thus, the issue the court must resolve is whether the answers to the questions presented by the allegations of negligence in the plaintiffs' complaint are beyond the ordinary understanding, knowledge, or experience of the average judge or juror. The court concludes that the questions at issue here are such that the answers are beyond such understanding, knowledge and experience. The Connecticut Appellate Court reached a similar conclusion in Keeney v. Mystic Valley Hunt Club, Inc., 93 Conn. App. 368 (2006). The court in Keeney found that

> the proper method of teaching a novice rider, the qualification necessary to be a competent and qualified instructor of a novice rider, whether to instruct such a rider to remove her or his feet from the stirrups, [and] where those stirrups should then be placed . . . are not matters within the common knowledge of the jury but, rather, are specialized matters unique to the profession of those teaching novice riders.

Id. at 376. These questions are either the same as or substantially similar to the majority of those raised by the plaintiffs in their complaint. See also Raudat v. Leary, 88 Conn. App. 44 (2005) (holding that expert testimony was required on the issue of whether a horse was one "that is incompletely broken or trained") (internal quotation marks omitted)). In Keeney the court explained that "[t]he plaintiffs' allegations in the present case are akin to allegations of professional negligence or malpractice . . . . because the defendant was rendering specialized professional service to the plaintiff."

-8-

Keeny, 93 Conn. App. at 375. The court observed that "[w]e are well into the age of the automobile, and the general public in the twenty-first century is not generally as acquainted with horsemanship as it arguably was at the beginning of the twentieth century." Id. Therefore, the court concluded, it was necessary "for the plaintiffs to produce expert testimony to establish both the standard of care to which the defendant was to be held and a breach of that standard." Id. at 376.

The same reasoning is applicable here. The services being provided by the defendant, i.e. horseback riding lessons to minor children, are specialized and beyond the ordinary understanding, knowledge and experience of jurors. Since Keeny, the general public has not become more familiar with horsemanship or the appropriate method for teaching minors how to ride horses. Therefore, the issues raised by the plaintiffs' contentions as to all the ways in which Camp Mohawk was negligent require expert testimony.

The plaintiffs' arguments to the contrary are not persuasive. The plaintiffs point to three issues they claim do not require expert testimony: "whether [the Camper] was too big to be riding Geri the pony to begin with"; "whether [the Camper's] stirrups were properly adjusted prior to beginning her lesson"; and "whether Geri the pony was disobedient." (Pl.'s Mem. Opp. Mot. Summ. J. (Doc. No. 48) ("Pl.'s Mem."), at 10-11.)

In support of this contention, the plaintiffs point to excerpts of deposition testimony by a number of witnesses that included substantially similar statements. However, the mere existence of a lay opinion regarding a particular issue does not obviate the necessity of an expert opinion on that same issue, if an expert opinion is required in the first place. None of the deponents cited are the plaintiffs' expert. Therefore, their testimony does not suffice to create a genuine issue of material fact as to these issues.

### B. Whether the Plaintiffs' Expert is Qualified

The defendants argue that because expert testimony is required on the issues raised by the plaintiffs' contentions, summary judgment should be granted because the only expert the plaintiffs have identified is not qualified to give an expert opinion on those issues. The court agrees.

Under Federal Rule of Evidence 702 a witness may serve as an expert if he or she "is qualified as an expert by knowledge, skill, experience, training, or education." Among other requirements, "the expert's scientific, technical, or other specialized knowledge [must] help the trier of fact to understand the evidence or to determine a fact in issue." Id. The plaintiffs have disclosed Corey Andres of Robson Forensic as their expert. His expert report contains a description of his education and experience. He has no education, training, or

experience related to horseback riding.  In fact, there is no mention of "horses" or "horseback riding" anywhere in his curriculum vitae.

In 1998, Andres received a Bachelor's of Education with a major in therapeutic recreation and a minor in psychology.  He received a Master's of Education with a major in therapeutic arts in 1999.  In 2005, Andres received a Master's of Arts in educational policy and leadership; in connection with that degree, he participated in the Principal Licensure Cohort Program.  His work experience is comprised of working as a graduate teaching assistant from 1998 to 1999 (where his focus was community recreation programming), working as a 4th and 5th grade teacher from 2001 to 2002, and working as an intervention specialist teacher at a high school in Ohio from 2002 to the present; in that capacity he leads a department of 36 professionals that serve special needs students.  Since 2010 he has also been an associate at Robson Forensic, Inc.

In high school and college, Andres was involved with football, lacrosse, track, tennis and various intramural sports, in addition to being a certified lifeguard.  He worked at a summer camp in 1995 instructing skills and techniques of golf, basketball, baseball, waterfront activities and tennis.  He subsequently worked at camps in a number positions during the period from 1995 to 2008 and taught weightlifting and lacrosse.

He has coached lacrosse and also served as a weight room supervisor, giving instructions on proper lifting techniques and exercises.

His resume indicates that his work for Robson Forensic, Inc. has involved providing technical investigations, analysis reports and testimony in connection with commercial and personal injury litigation involving: school administration, child supervision, recreation and sports programing, coaching, camp supervision and administration, weight training and athletic conditioning.

The only indication that he has had any involvement whatsoever with horseback riding is the fact that at page 6 of his report he cites in footnotes three publications on which he has relied in preparing his report.

At issue in Keeney was whether the plaintiff's riding instructor was negligent in providing an unsafe instruction to a novice rider. The court concluded that the trial court had not abused its discretion in precluding the proposed expert witness from testifying about the appropriate standard for a riding instructor to teach a young novice rider, explaining

> The issue in this case, however, was whether Heather Keeney's riding instructor was negligent in providing an unsafe instruction to this novice rider. The expert, although having been a certified horse riding instructor since 1973, testified that she had not trained young novice riders in more than twenty years, had taken no refresher courses in training students,

>   had no specialized training in the use of lunge lines with novice riders, had never prepared any instructional or training materials for instructors, had never served on a safety committee and had never taught riding instructors. On the basis of this testimony, we cannot conclude that the court abused its discretion in precluding this witness from testifying as to the appropriate standard for a riding instructor to teach a young novice rider.

93 Conn. App. 372-73.

Andres falls far short of having the qualifications possessed by the proffered expert in Keeney. Because expert testimony is required for the plaintiffs to establish their case and they have failed to produce a qualified expert, they have failed to create a genuine issue of material fact as to any of the issues raised in the complaint, and the defendant is entitled to judgment as a matter of law.

**IV. CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment (Doc. No. 43) is hereby GRANTED.

The Clerk shall enter judgment in favor of defendant Y.M.C.A. Camp Mohawk, Inc. as to all the claims in the complaint and close this case.

It is so ordered.

Dated this 11th day of August, 2014, at Hartford, Connecticut.

                                          /s/
                                   Alvin W. Thompson
                              United States District Judge